*Law Clerk's Copy*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

GLEN WILLIAM KOSKI,          :
            Petitioner   :
                   :
                   :
      v.             :   Civil No. 1:CV-00-0640
                   :   (Judge Rambo)
UNITED STATES,               :
            Respondent   :

RESPONDENT'S EXHIBITS IN SUPPORT OF
ITS REPLY TO PETITIONER'S TRAVERSE

DAVID M. BARASCH
United States Attorney

KATE L. MERSHIMER
Assistant U.S. Attorney
228 Walnut St., 2nd Floor
P.O. Box 11754
Harrisburg, PA 17108-1754
717/221-4482

Date:  August 4, 2000

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

Glenn Koski,                          :
     Petitioner                     :
                                    :
                                    :    Civil No.: 1:CV-00-640
                                    :
v.                                    :
                                    :
                                    :
United States of America, et al.,     :
    Respondent                      :
                                    :

## SUPPLEMENTAL DECLARATION OF LINDA J. EDWARDS

I, Linda J. Edwards, do declare and state as follows:

1.    I am currently employed by the United States Department of Justice, Federal Bureau of Prisons (BOP) as the Inmate Systems Manager (ISM) assigned to the Federal Prison Camp, Allenwood, Pennsylvania (FPC-Allenwood).  I have been employed by the BOP since April 21, 1991; and I have held the position of ISM at FPC-Allenwood since March 2000.

2.    I am aware that inmate Glenn Koski, Register Number 03235-082, filed a Petition for Writ of Habeas Corpus, in which he alleges that his sentence was miscomputed.  Specifically, he alleges that he was entitled to additional prior custody credit. His projected release date is March 1, 2001, via Good Conduct Time release.

3.    Previously, I submitted a declaration in this case with respect to the manner in which inmate Koski's sentence was computed by ISM staff at FPC-Allenwood.  The present declaration is intended to supplement, not replace the information contained in my previous declaration.  As such, I incorporate by reference all of the provisions of my previous declaration dated June 20, 2000.

4.    Bureau of Prisons Program Statement 5880.28, Sentence Computation Manual -- CCCA, dictates and explains the procedures for granting prior custody credit to inmates.  Quoting Title 18 U.S.C. § 3585(b), that provision explicitly states that prior custody credit may be granted for any period of incarceration

prior to the date of sentencing, "that has not been credited against another sentence." The Program Statement also dictates that if prior custody credit is granted, but records later reflect that the period of time in question was previously credited toward another sentence, the credit must be revoked. Exhibit 1 is a true and correct copy of the relevant portions of Program Statement 5880.28, Sentence Computation Manual -- CCCA.

5.    When an inmate is incarcerated by the BOP, his sentence is initially computed upon his arrival to an institution. That sentence computation is then perpetually audited to account for any necessary changes. Additionally, each computation is periodically reviewed in order to ensure that no mistakes were made.

6.    Inmate Koski arrived at FPC-Allenwood on February 16, 1999. At that time, staff computed the duration of his sentence. The period of time in question (July 30, 1991 until October 12, 1992) was credited toward his Federal sentence because there was no indication in his file that it had been credited toward any other term of imprisonment. According to that initial sentence computation, inmate Koski's release date would have been December 16, 1999.

7.    In September 1999, inmate Koski's sentence was reviewed pending his release. At that time, the United States Probation Office provided materials which indicated that a mistake had been made in the computation. Specifically, 441 days of prior custody credit was improperly credited toward his Federal sentence. As reflected in the Canadian sentencing transcript, this period of time had been previously credited toward inmate Koski's Canadian sentence. As a result, his sentence computation was amended and the 441 days which had been credited toward inmate Koski's Canadian sentence were deleted. His new projected release date became March 1, 2001 via Good Conduct Time release. Exhibit 2 is a true and correct copy of the materials submitted by the United States Probation Office.

8.    None of the materials submitted by the United States Probation office had been previously reviewed by any staff member at FPC-Allenwood. As a result, although staff were aware of the Canadian sentence, they were not aware that the Canadian court had deducted a period of time from that sentence to account for the time inmate Koski was detained prior to his Canadian sentencing.

9.    Prior to making this correction, however, staff consulted with the Northeast Regional Office Inmate Systems Administrator, and the Bureau of Prisons Central Office Inmate Systems Administrator. Additionally, staff consulted with the Northeast

Regional Counsel's Office, and legal staff at the Federal
Correctional Complex, Allenwood, Pennsylvania.  All of the
consulted staff members agreed that because inmate Koski's
Canadian sentence had been credited with the period of time in
question, it would violate Bureau of Prisons policy, as well as,
Title 18 U.S.C. § 3585(b).  As a result, the credit was removed
from his sentence computation.  See Exhibit 2.

10.  At no time was a "quasi-judicial hearing" held to determine
the amount of prior custody credit which should be awarded.
Additionally, the American sentencing court made no mention of
prior custody credit in the Judgment and Commitment Order.
Exhibit 3 is a true and correct copy of inmate Koski's Judgment
and Commitment Order.

11.  Finally, if inmate Koski was dissatisfied with any aspect of
his sentence computation, he did have appeal rights.  By
following the Administrative Remedy procedures, an inmate may
appeal any aspect of his sentence computation to the Warden of
the institution.  An adverse decision could then be further
appealed to the appropriate regional office, and finally to the
BOP Central Office.  It is my understanding that inmate Koski
pursued all of his Administrative appeals and was denied relief
at all three levels.

I declare under penalty of perjury in accordance with the
provisions of 28 U.S.C. § 1746 that the above is accurate to the
best of my knowledge and belief.


_____                _____
Linda J. Edwards                                          Date
Inmate Systems Manager
FPC-Allenwood

# EXHIBIT
# 1

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 14

c.  **Prior Custody Time Credit.**  The SRA includes a new statutory provision, 18 U.S.C. § 3585(b), that pertains to "credit for prior custody" <u>and is controlling for making time credit determinations for sentences imposed under the SRA</u>.  Title 18 U.S.C. § 3568, repealed effective November 1, 1987, as implemented by the <u>"Old Law" Sentence Computation Manual</u>, remains the controlling statute for all sentences imposed for offenses that occurred on or after September 20, 1966 up to November 1, 1987.

<u>Statutory Authority</u>:  Prior custody time credit is controlled by 18 U.S.C. § 3585(b), and states,

> **"A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--**
>
> > **(1) as a result of the offense for which the sentence was imposed; or**
> >
> > **(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;**
>
> **that has not been credited against another sentence."**

<u>Definitions</u>:

**Raw EFT:**  The Raw EFT for both a federal and non-federal sentence is determined by adding the total length of the sentence to be served to the beginning date of the sentence resulting in a full term date of sentence (**Raw EFT**) that does not include any time credit, e.g., presentence or prior custody time or good time.  (Inoperative time that may affect either the state or federal **Raw EFT** shall be referred to the RISA for assistance.)

0000005

Case 1:00-cv-00640-SHR-DB   Document 12   Filed 08/04/2000   Page 8 of 68



In the above example, the time spent on writ is not creditable as the underlying basis for custody is the state offense and all time is credited to the state offense.

Example: 4

.(b)   Credit related to 18 U.S.C. § 3585(b)(2).

<u>1</u>   Prior Custody Credit will be given for time spent in official detention as the result of any federal, state or foreign arrest which is not related to, yet occurred on or after the date of the federal offense **(as shown on the judgment and commitment)** for which the SRA sentence was imposed; provided it has not been credited to another sentence. The language in this Section eliminates any need for a federal detainer to be on file or for bail to be set on the state or foreign charges as a prerequisite for applying such prior custody time credit toward the federal sentence.   Relevant prerequisites are:

<u>a</u>   The non-related official detention must have occurred on or after the <u>date</u> of the federal offense for which the SRA sentence was imposed.

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 22

    b    The non-related official detention must not have been granted on another sentence.  If it was applied on a state or foreign sentence, then credit is not applicable to the SRA sentence.

    2    Failure by the non-federal government to grant official detention credit (or the credit granted was of no benefit) on a non-federal sentence,  can be determined if:

    a    the non-federal charges were dismissed.

    b    non-federal probation was granted.

    c    the federal and non-federal terms are concurrent and the Raw EFT of the non-federal term is equal to or less than Raw EFT of the federal sentence.  Prior custody credits shall be given for any time spent in non-federal presentence custody that begins on or after the date of the federal offense up to the date that the first sentence begins to run, federal or non-federal.  These time credits are known as **Willis** time credits (See **Willis v. U.S.**, **449 F2d 923 (CA 5, 1971)**.  Credit shall <u>not</u> be given for any time spent in non-federal presentence custody prior to the date of the SRA offense. Further, if the release from the non-federal sentence occurs prior to the commencement of the federal sentence, then any non-federal presentence time awarded on the state sentence shall <u>not</u> be applied to the federal sentence.  Any other existing prior

P.S. 5880.28
Page 1 - 22
CN-02, July 29 1994

    <u>a</u>   The non-related official detention must have occurred on or after the <u>date</u> of the federal offense for which the SRA sentence was imposed.

    <u>b</u>   The non-related official detention must not have been granted on another sentence. If it was applied on a state or foreign sentence, then credit is not applicable to the SRA sentence.

    <u>2</u>   Failure by the state to grant official detention credit (or the credit granted was of no benefit) on a state sentence, can be determined if:

        <u>a</u>   The state charges were dismissed.

        <u>b</u>   State probation was granted.

        <u>c</u>   The federal and state terms are concurrent and the EFT of the state term is absorbed within the EFT of the federal sentence (prior to applying any federal prior custody credits and regardless of any award of presentence credits by the state). Prior custody credits would be given up to the date that the first sentence begins to run, federal or state. Credit shall <u>not</u> be given for any time spent in custody prior to the date of the SRA offense. Further, if the release from the non-federal sentence occurs prior to the commencement of the federal sentence, then any non-federal prior custody time awarded on the state sentence shall <u>not</u> be applied to the federal sentence.

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 22A

custody time credits shall be deducted from the federal EFT after application of the **Willis** time credits.   The following examples are based on the Raw EFT of the non-federal sentence being equal to or less than the Raw EFT of the federal sentence:

**Example No. 5**
```
Date of Federal Offense              = 03-12-1994
Date Arrested by State               = 03-25-1994
Date State Sentence Begins           = 04-15-1994
Date Concurrent Federal Sentence Begins = 05-10-1994
```

Time to award off the federal sentence is from
**03-25-1994 through 04-14-1994 which equals 21 days.**



```
    State Arrest       DSB
     03-25-94      04-15-94                    Raw EFT 04-14-99

         21 days

03-12-94                   05-10-94                        05-09-99
Federal Offense Date       CC Federal Sentence Begins       Raw EFT
```

**Example No. 6**
```
Date of Federal Offense              = 03-12-1994
Date Arrested by State               = 03-25-1994
Date Federal Sentence Begins         = 04-01-1994
Date Concurrent State Sentence Begins = 04-15-1994
```

Time to award off the federal sentence is from
**03-25-1994 through 03-31-1994 which equals 7 days.**



```
    State Arrest       DSB
     03-25-94      04-15-94                    Raw EFT 04-14-99

         7 days

03-12-94
Federal                  04-01-94                        03-31-01
Offense Date             Federal Sentence Begins          Raw EFT
```

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 22B

**Example No. 7**
Date Arrested by State                          = 03-25-1994
Date of Federal Offense                         = **03-31-1994**
Date State Sentence Begins                      = **04-15-1994**
Date Concurrent Federal Sentence Begins         = 05-10-1994

Time to award off the federal sentence is from
**03-31-1994 through 04-14-1994** which equals **15 days.**



**Example No. 8**
Date Arrested by State                          = 03-25-1994
Date of Federal Offense                         = **03-31-1994**
Date Federal Sentence Begins                    = **04-01-1994**
Date Concurrent State Sentence Begins           = 04-15-1994

Time to award off the federal sentence is from
**03-31-1994 through 03-31-1994** which equals **one** day.



<u>d</u>    If the **non-federal and federal**

**sentences are concurrent,** the Raw EFT of the non-federal term is

greater than the Raw EFT of the federal term, and if the non-.

federal Raw EFT, after application of **qualified** non-federal

0000010

P.S. 5880.28
Page 1 - 22B
CN-02, July 29 1994

federal EFT.  For example, if the state EFT was reduced by 100 days of **qualified** state presentence time credit and if, as a result, the state EFT becomes 47 days earlier than the federal EFT, then the federal EFT shall be reduced by the 47 days so as to equal the state EFT.  Any federal prior custody time credits shall then be applied to the just adjusted federal EFT.  Credit shall <u>not</u> be applied for any time spent in state presentence custody that occurred prior to the date of the SRA offense. (This rule has been adopted to conform to the Seventh Circuit Court of Appeals decision in <u>Kayfez</u> v. <u>Gasele</u>, 993 F.2d 1288 (7th Cir. 1993).)  (See Example: 5)



ST Arrest                    ST Sent                         ST Final  EFT
        100 Days JC                                                              47 Days
                                                                                 Difference
              Fed Sent CC                              Fed Raw EFT

   As a result of the application of the State pre-sentence
   credits, the difference in the ST Final EFT and the Fed Raw
   EFT is 47 days.  The 47 days of state pre-sentence credits
   shall now be applied to the federal term of imprisonment as
   qualified state pre-sentence time.

Example: 5

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 22C

presentence time, is reduced to a date that is earlier than the federal Raw EFT, then a **Kayfez** (See **Kayfez v. Gasele**, 993 F.2d 1288 (7th Cir. 1993) situation exists.  In such a situation, the amount of **qualified** non-federal presentence time, i.e., the amount of time in non-federal presentence time after the date of the federal offense to the date that the non-federal or federal sentence commenced, whichever is earlier, shall be applied to the non-federal Raw EFT.  The federal Raw EFT shall then be reduced to equal the reduced non-federal EFT.  Any other existing prior custody time credits shall be deducted from the federal EFT after application of the **Kayfez** time credits.  Following are some examples that demonstrate the process:

### Example No. 9

| | |
|---|---|
| Non-Federal Raw EFT | = 09-18-1997 |
| Federal Raw EFT | = 09-05-1997 |
| | |
| Date of Federal Offense | = 03-12-1994 |
| Date Arrested by Non-Federal Agency | = 03-25-1994 |
| Date Non-federal Sentence Begins | = 04-15-1994 |
| Date Concurrent Federal Sentence Begins | = 05-10-1994 |

Qualified non-federal presentence time is from **03-25-1994 through 04-14-1994** which equals **21 days**.  The non-federal Raw EFT shall be reduced by the 21 days to August 28, 1997 and the federal Raw EFT shall be reduced to that date resulting in an award of 8 days of prior custody time credits.



```
     State Arrest      DSB                                Raw EFT 09-18-97
      03-25-94       04-15-94
         |--------------|------------------------------------|
                                                    08-28-97
                                                    21 days
              21 days                               08-28-97
         ■    _____                           _____■
                                                           8 days
   03-12-94                   05-10-94                     09-05-97
   Federal Offense Date      CC Federal Sentence Begins    Raw EFT
```

0000012

                                              PS 5880.28
                                 (CN-03) February 14, 1997
                                        Page 1 - 23

        <u>Example No. 10</u>
        Non-Federal Raw EFT                    = 09-18-1997
        Federal Raw EFT                        = 09-15-1997

        Date of Federal Offense                = 03-12-1994
        Date Arrested by Non-Federal Agency    = **03-25-1994**
        Date Federal Sentence Begins           = **04-01-1994**
        Date Concurrent Non-Fed Sentence Begins = 04-15-1994

        Qualified non-federal presentence time is from
**03-25-1994 through 03-31-1994** which equals 7 days.  The non-
federal Raw EFT shall be reduced by the 7 days to September 11,
1997 and the federal Raw EFT shall be reduced to that date
resulting in an award of **4 days** of prior custody time credits.



        <u>Example No. 11</u>
        Non-Federal Raw EFT                    = 09-18-1997
        Federal Raw EFT                        = 09-15-1997

        Date Arrested by Non-Federal Agency    = 03-25-1994
        Date of Federal Offense                = **03-31-1994**
        Date Non-Federal Sentence Begins       = **04-15-1994**
        Date Concurrent Federal Sentence Begins = 05-10-1994
        Date Arrested by Non-Federal Agency    = 03-25-1994
        Date of Federal Offense                = **03-31-1994**
        Date Non-Federal Sentence Begins       = **04-15-1994**
        Date Concurrent Federal Sentence Begins = 05-10-1994

        Qualified non-federal presentence time is from
**03-31-1994 through 04-14-1994** which equals **15 days**.  The non-
federal Raw EFT shall be reduced by the 15 days to September 3,
1997 and the federal Raw EFT shall be reduced to that date
resulting in an award of **12 days** of prior custody time credits.

P.S. 5880.28
Page 1 - 23
CN-02, July 29 1994



While serving a state sentence, the state conviction is
vacated.  All time spent in state custody is credited
to SRA term, which begins on the date received, in
accordance with 18 USC § 3585(a).

Example: 6

        g   Ordinarily, if a state

sentence is imposed, either before or after the time that the

federal sentence commences, it is presumed that the state has

awarded, or will award, presentence time off the state sentence

for time spent in state custody in connection with the state

offense and ISM staff need make no further inquiry about it

unless the inmate claims that no state credit was, or will be,

given.  In such a case, ISM staff shall follow the instructions

in subparagraphs c.(2), (a) and (c).                              *

0000014



**Example No. 12**

| | |
|---|---|
| Non-Federal Raw EFT | = 09-18-1997 |
| Federal Raw EFT | = 09-15-1997 |
| | |
| Date Arrested by Non-Federal Agency | = 03-25-1994 |
| Date of Federal Offense | = **03-31-1994** |
| Date Federal Sentence Begins | = **04-01-1994** |
| Date Concurrent Non-Fed Sentence Begins | = 04-15-1994 |

Qualified non-federal presentence time is from **03-31-1994 through 03-31-1994** which equals 1 day. The non-federal Raw EFT shall be reduced by the 1 day to September 17, 1997 and the federal Raw EFT shall remain the same since the reduced non-federal EFT is still greater than the federal Raw EFT resulting in no prior custody time credit off the federal sentence.



PS 5880.28
(CN-03) February 14, 1997
Page 1 - 24

       <u>e</u>  The state sentence is vacated with further prosecution deferred, thereby effectively vacating the non-federal credit (See Example:  13).



While serving a state sentence, the state conviction is
vacated.  All time spent in state custody is credited
to SRA term, which begins on the date received, in
accordance with 18 USC § 3585(a).

Example: 13

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 24A

<u>f</u>    Ordinarily, if a state
sentence is imposed, either before or after the time that the
federal sentence commences, it is presumed that the state has
awarded, or will award, presentence time off the state sentence
for time spent in state custody in connection with the state
offense and ISM staff need make no further inquiry about it
unless the inmate claims that no state credit was, or will be,
given.  In such a case, ISM staff shall follow the instructions
in subparagraphs c.(2), (a) and (c).                          *

(c)   Credit related to a probation sentence
under 18 U.S.C. § 3563(b)(11) or (12).

<u>1</u>    Time accrued prior to the beginning
of the probation sentence shall <u>not</u> operate to reduce the time to
serve in a Community Corrections Center or in custody of the
Bureau of Prisons as a condition of probation.

<u>2</u>    Time spent in the intermittent
custody of the Bureau of Prisons or in a Community Corrections
Center as a condition of probation under subsection (11) or (12)
is <u>not</u> creditable as prior custody time credit on a subsequent
sentence received as a result of a revocation of the probation.
*   Time spent serving a term of <u>probation</u> is not official detention
as to a sentence of imprisonment.

<u>3</u>    Prior custody time accrued after
the date of offense for the original sentence (not awarded to any
other sentence) that led to the probation sentence and any prior
custody time accrued after arrest as an alleged probation
violator, shall be applied to the subsequent sentence of

imprisonment imposed as a result of the probation revocation,
pursuant to the guidelines previously discussed in this policy.
The date of offense for the probation revocation term is the same
as the date of offense for the original sentence that led to the
probation sentence.                                              *

          (d)   Credit previously awarded which must be
withdrawn later.

          In the event periods of state (or
foreign) credit unrelated to the SRA offense are applied to an
SRA sentence, and the state (or foreign country) later convicts
and sentences the individual to a term of imprisonment, the
credit given by the state will be withdrawn from the federal
computation provided the time in question does not convert to
"Willis" or "Kayfez" type of time credit as previously discussed.
Should the state grant credit for time in federal custody, the
time will not be withdrawn (provided it is directly related to
the SRA Offense and not another federal charge)(see Example: 14).

          Occasionally, while serving a criminal sentence, a
prisoner will receive a civil contempt sentence which shall
interrupt the service of that criminal sentence.  Prior custody
time credit is not accrued toward any other sentence during
service of a civil contempt sentence even if the service of the
civil contempt sentence is before trial and/or sentence on the

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 24C



SRA
Arrest      Bond

SRA Sentence
Imposed

State
Arrest      Bond

Turned
Over to
State

CS State Term

Initially, the period of state presentence custody would be applied, as it was not credited to another sentence; once a state consecutive term is imposed the state custody time is withdrawn.  <u>Exclusive</u> federal prior custody time will **not** be withdrawn, regardless of the state computation.

Example: 14

criminal sentence to which it pertains.  There are **two** civil

contempt sections.  **18 U.S.C. § 401** states,

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as--
>
> (1)  Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> (2)  Misbehavior of any of its officers in their official transactions;
>
> (3)  Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 24D

A civil contempt sentence under 18 U.S.C. § 401 is under the sole jurisdiction of the court and has no time limit. The sentence will not terminate until the prisoner purges himself of the contempt or until the court orders the sentence terminated. 28 U.S.C. § 1826 states,

> (a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of--

> (1)  the court proceeding, or
> (2)  the term of the grand jury, including extensions,

> before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

> (b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but no later than thirty days from the filing of such appeal.

> (c) Whoever escapes or attempts to escape from the custody of any facility or from any place in which or to which he is confined pursuant to this section or section 4243 of title 18, or whoever

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 25

> rescues or attempts to rescue or instigates,
> aids, or assists the escape or attempt to
> escape of such a person, shall be subject to
> imprisonment for not more than three years,
> or a fine of not more than $10,000, or both.

A civil contempt sentence under 28 **U.S.C.** § **1826**
may be ended in any one of **four** ways, the actual manner dependent
upon which circumstance occurs first, and they are: **1)** The
prisoner purges himself of contempt by cooperating with the
court; **2)** the court proceedings terminate; **3)** the term imposed by
the court (not to exceed 18 months) expires; and **4)** the term of
the grand jury expires.

Unless the court orders otherwise, a civil
contempt sentence shall **interrupt** the service of a criminal
sentence for the duration of the civil contempt sentence. As a
result, in the case of a civil contempt sentence that is ordered
to commence on the date that it is imposed, the criminal sentence
will become inoperative on the day after the civil contempt
sentence begins and shall resume running on the day that the
contempt sentence ends, providing that the prisoner is in federal
custody for service of the criminal sentence.

If the civil contempt sentence is ordered to begin
some date in the future, then the criminal sentence will become
inoperative **on the day** that the contempt sentence begins and
shall resume running on the day that the contempt sentence ends,
providing that the prisoner is in federal custody for service of
the criminal sentence.

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 26

If a civil contempt sentence is in effect when a criminal sentence is imposed, and the prisoner is available for service of the sentence, the just imposed criminal sentence runs concurrently with the civil contempt sentence **unless** the court specifically orders the criminal sentence to be served consecutively to preserve the intended effect of the civil contempt sentence.

(2)    DOCUMENTATION.  Prior custody credit will be given only with proper documentation indicating that the prisoner was in official detention within the application of paragraph 5. Proper documentation will consist of written documentation, for placement in the prisoner's Judgment and Commitment File, from any law enforcement agency (including probation officers).  This includes verified phone, fax, or teletype messages, PSI, Rap Sheet, Booking Sheets, SENTRY, USM Form 129, etc.

(a)  No credit shall be given based solely on documents or information received from a prisoner, a defense attorney, or other person or organization acting on the behalf of the inmate.  Information from such sources shall be thoroughly investigated and verified before credit may be given.  The verification effort will consist of one communication (with written documentation that contact was made, either in the form of a copy of the letter, fax, or teletype message, or by documenting the phone call) and one following communication if no response is received.  If the follow-up communication produces no

response, the matter should be referred to the appropriate
Regional Inmate Systems Administrator.

      (b)  Should the Judgment and Commitment order make
a **recommendation** that a period of time credit be awarded to the
sentence that is not authorized, the recommendation may be
treated as surplusage and the credit will not be allowed.  No
letter need be written to the court that the time was not
awarded.  If the court, however, **orders** that a period of time be
awarded that is not authorized, a letter must be sent to the
appropriate U.S. Attorney requesting assistance in resolving the
problem (Follow the instructions in the **Inmate Systems Manual** for
communicating with the U.S. Attorney and the **Reno v. Koray**
instructions beginning on page 1 - 14F, if  applicable).  Pending
resolution of the problem, the sentence shall be computed as
reflected on the Judgment and Commitment.              *

      (3)  <u>QUESTIONABLE SITUATIONS</u>.  Questions or problems
that arise as to the applicability of any of the provisions of
this policy shall be referred to the Regional Inmate Systems
Administrator.  Any resolution of a question or problem that may
require a decision outside of, or contrary to, this policy or
that may require a precedent setting decision, shall be referred
to the Chief of Inmate Systems in the Central Office for review.

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 31

e.  Multiple Sentences of Imprisonment.  The statute that governs the manner in which multiple sentences of imprisonment may be imposed is 18 U.S.C. § 3584.

(1)  Subsection (a) of Section 3584 states,

(a) Imposition of concurrent or consecutive terms.--If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt.  Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively.  Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

The Bureau of Prisons interprets the phrase, "an undischarged term of imprisonment," as applying to any lawfully imposed federal or state, local or foreign (non-federal) sentence or revocation of a conditional release term (probation, supervised release, parole, etc.).

The legislative history for this subsection states that,

. . . if the court is silent as to whether terms of imprisonment imposed at the same time (emphasis added) are concurrent or consecutive, the terms run concurrently unless a statute requires that they be consecutive.  If, on the other hand, multiple terms of imprisonment are imposed at different times (emphasis added) without the judge specifying whether they are to run

# EXHIBIT
# 2

# UNITED STATES PROBATION OFFICE
## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

**Burlington, VT 05402-0432**
(402 U.S. Courthouse)
(11 Elmwood Avenue)
P.O. Box 432
(802) 652-3000/(800) 552-6933
FAX: (802) 652-3014

**Brattleboro, VT 05302-0339**
(U.S. Courthouse)
(204 Main Street)
P.O. Box 339
(802) 254-0251/(800) 537-0456
FAX: (802) 254-0268

PHILIP K. ALBERTSON
Chief Probation Officer



Reply to:  Burlington

September 13, 1999

Charles McIntyre
Inmate Systems Manager
Federal Prison Camp
P.O. Box 1000
Montgomery, PA 17752,

RE: KOSKI, Glenn    REG.#: 03235-082

Dear Mr. McIntyre:

As we discussed on the telephone, the purpose of this letter is to request that you revisit the issue of credit for time served on the above mentioned inmate. According to the records forwarded from the Federal Bureau of Prisons, he is eligible to receive a total of 491 days of jail credit. We are not challenging the credit for time spent in detention since 7/23/96. Rather, the issue focuses on credit for time served while awaiting extradition and prosecution in Canada.

To assist you in making your determination, I am forwarding the following documents for your review:

*Attachment A* - The sentencing transcript from the court in Canada on October 13, 1992.

*Attachment B* - An abbreviated version of the Order issued by U.S. District Court Judge William K. Sessions III on January 15, 1999.

*Attachment C* - An abbreviated version of the transcript of an evidentiary hearing held before the Honorable William K. Sessions III on January 15, 1999.

*Attachment D* - A copy of page 38 of the presentence report in this case, detailing the only previous criminal conviction for Koski.

On January 19, 1999, after being found guilty by a jury verdict, the above mentioned inmate was sentenced by the Honorable William K. Sessions III, United States District Court Judge for the District of Vermont, to the custody of the Federal Bureau of Prisons for a period of 30 months, to be followed by a three year term of supervised release. He is presently incarcerated at your facility serving this sentence.

0000026

By way of background, Koski pled guilty in Canada on October 13, 1992, to conspiring to traffic cannabis and was sentenced to 4 years imprisonment. Koski had been detained as a result of that charge since July 30, 1991 when he was arrested in the United States and ordered detained pending extradition. He remained in official U.S. detention until he was formally extradited to Canada on 8/16/92. This information is detailed in the U.S. Marshals Form 129. As detailed on page 13 of the sentencing transcript in this case (Attachment A) the sentencing court took the detention into consideration when it fashioned the four year sentence. Specifically the court noted

"...with the exception of Mr. Beaudry, they have all been detained for a little more than a year which would give us twenty-eight (28) months in prison already[1]. Also the fact that they are pleading guilty which makes a difference also since a long trial is not...will not take place and that's always an important consideration, at least on my part, so the sentences will be as follows:..." Koski was then sentenced to four years imprisonment.

On February 12, 1994, he was paroled on this sentence and deported back to the United States. He was then charged in this District with a variety of charges including violation of the Maritime Drug Act.

On January 15, 1999, after the trial and prior to an evidentiary hearing, the Honorable William K. Sessions III issued an order (Attachment B) on specific guideline application issues with respect to Koski and the other defendants. On pages 21 and 22 of this order, the court specifically excluded hashish that was destined for Canada and noted "...the fact that these defendants have been prosecuted, convicted and incarcerated for these drugs, which for the most part never reached the United States soil, is crucial to the Court's determination of the quantities for which they should be sentenced here." Then during the evidentiary hearing (Attachment C) on that same date, the Honorable William K. Sessions III noted that "... Rather, the issue, seems to me, is one of a guideline application, and what is unique about this case, and which distinguishes this case from all others is that these defendants were prosecuted in Canada and in fact incarcerated for a significant period of time as a result of the same activity. So if in fact you say all of the drugs were to be attributed to this sentence as well as the Canadian sentence, then obviously there is a -- there is a duplication."

The Court then determined Koski's base offense level on the drugs that were destined for the United States. On page 38 of the of the presentence report in this case (Attachment D), the inmate's conviction in Canada notes that he spent a total of 33 months in detention on this charge. This figure includes the time spent in U.S. detention awaiting extradition. Knowing that the Canadian court had already considered the time spent in U.S. detention awaiting extradition, it was this Court's intent that Koski serve 30 months imprisonment without credit for the time he was detained pending the 10/13/92 Canadian sentencing.

I hope that this clarifies this Office's position that Koski should not receive credit for the time he spent in detention prior to the 10/13/92 sentencing. Inasmuch as he has a projected release date of 12/16/99 and a requested electronic monitoring placement date of 9/29/99, it is requested that you notify me of your decision as soon as possible.

Very truly yours,

David C. Sem
U.S. Probation Officer

Attachments

cc: Hank Sadowski, Regional Counsel
    Federal Bureau of Prisons

0000027

[1] According to Canadian Jurisprudence, time spent in preventative detention is doubled.



CANADA                          COUR DU QUEBEC

PROVINCE DE QUEBEC

DISTRICT DE MONTREAL

ETAPE:  SENTENCE

CAUSE NO. 01-018172-921

---

PRESENT:  L'HONORABLE JUGE YVES LAGACE, J.C.Q.

---

NOMS DES PARTIES:           **SA MAJESTE LA REINE**
                            Plaignante



                            -vs-




                            **STEPHEN B. HUTCHINS et al**
                            Accusés

---

NOMS DES PROCUREURS:        **MAITRE J.-F. FONTAINE**
                            PROCUREUR DE LA COURONNE

                            **MAITRE MICHEL MASSICOTTE**
                            PROCUREUR DE LA DEFENSE

                            **MAITRE JEAN CHALOIS**
                            PROCUREUR DE LA DEFENSE

                            **MAITRE RICHARD SHADLEY**
                            PROCUREUR DE LA DEFENSE

                            **MAITRE JULIO PERIS**
                            PROCUREUR DE LA DEFENSE

---

DATE DE L'AUDITION:         13 OCTOBRE 1992

STENOGRAPHE JUDICIAIRE:  MS. MAUREEN ROWE

NO. DE FICHIER:             8336          0000028

SENTENCE

CAUSE NO. 01-018172-921

# I N D E X

|  | PAGE |
|---|---|
| REPRESENTATIONS SUR SENTENCE | 8 |
| SENTENCE | 13 |

0000029

SENTENCE

CAUSE NO. 01-018172-921

(IDENTIFICATION DES PROCUREURS)

PAR MAITRE JEAN-FRANCOIS FONTAINE
PROCUREUR DE LA COURONNE:

Alors est-ce qu'on peut lire le chef d'accusa-

tion No. 3 tel qu'amendé.

PAR LA GREFFIERE:

Alors pour tous les accusés ...

PAR L'HONORABLE JUGE YVES LAGACE, J.C.Q.

Voulez-vous assermenter le ...

PAR LA COURONNE:

Il faut assermenter l'interprète, je m'excuse.

PAR LA GREFFIERE:

Je m'excuse, oui.

            SANDRA TRAYNOR
            Interprète officielle

            ASSERMENTEE

BY THE COURT:

Est-ce que ... would there be an objection to this

thing being translated after it's said in French

because I hear there are some back noise and I

don't think it's of much use now.  Ils ont des ...

are you able to understand?  Is it clear or do you

have problems?

BY AN UNIDENTIFIED VOICE:

It's clear.

0000030

SENTENCE

CAUSE NO. 01-018172-921

BY THE COURT:

It's O.K. now?

BY AN UNIDENTIFIED VOICE:

Yes.

PAR LA COUR:

All right, parce que j'entends des ... des grince-
ments.

PAR LA COURONNE:

C'est peut-être quand vous parlez, vous êtes trop
prêt?

PAR L'INTERPRETE:

Non c'est soit lorsque quelqu'un place la main
devant la bulle transparente qui transmet les on-
des là ou lorsque le volume est trop élevé.

BY THE COURT:

So put your hands clear of the ... don't put your
hands on it.

PAR LA GREFFIERE:

O.K.  All the accused, you are charged between
February 5th 1990 and July 24th 1991 in Montreal,
District of Montreal, Sept-Iles and Rivière-au-
Tonnerre, District of Mingan, St-Sauveur, Dis-
trict of Terrebonne, Canada and its other loca-
tions, did conspire together and with Michael D.
Johnson, Georges Wright, alias (inaud.), Corne-
lius Ziggerman, Ronald J.H. Van der Dereov (Sic)
and other unknown persons to traffic in Canada
a narcotic, to wit cannabis resin, committing an

jz                    -5-

0000031

SENTENCE

CAUSE NO. 01-018172-921


endictable offence contrary to section 465-1-C of

the Criminal Code and section 4-1 and 4-3 of the

Narcotic Control Act.

Do you wish to reopt before judge alone?

BY MAITRE MICHEL MASSICOTTE
ATTORNEY FOR THE DEFENCE: (W. Greer)

Yes, we do.

BY THE CLERK:

Do you plead guilty or not guilty?

BY THE COURT:

Well we'll start with Mr. Hutchins.  Do you plead

guity?

BY THE ACCUSED:  (Mr. Hutchins)

Yes, I do.

BY THE COURT:

Mr. ... you do Mr. Hutchins?  You'll have to say

so yourself?

BY THE ACCUSED:

Yes.

BY THE COURT:

Mr. Cunningham?  Mrs. Cunningham, I'm sorry, do

you plead guilty to this charge?

BY THE ACCUSED:  (Mrs. Cunningham)

Yes, Your Honor.

BY THE COURT:

Mr. James Stewart Mayo,  you plead guilty

to this charge?

SENTENCE

CAUSE NO. 01-018172-921

BY THE ACCUSED:  (Mr. Mayo)

Yes.

BY THE COURT:

Mr. William Greer, you plead guilty to this

charge?

BY THE ACCUSED: (Mr. Greer)

Yes.

BY THE COURT:

Eugène Beaudry, you plead guilty to this charge?

BY THE ACCUSED:  (Mr. Beaudry)

Yes.

BY THE COURT:

Gary Norman Pereya, you plead guilty to this

charge?

BY THE ACCUSED:  (Mr. Pereya)

Yes, sir.

BY THE COURT:

Joseph Robert Desautels, you plead guilty to this

charge?

BY THE ACCUSED:  (Mr. Desautels)

Yes, sir.

BY THE COURT:

William Carr, you plead guilty to this charge?

BY THE ACCUSED:  (Mr. Carr)

Yes.

BY THE COURT:

And Glen William Klosky (sic), you plead guilty

to this charge?

jz                    -7-                 0000033

SENTENCE

CAUSE NO. 01-018172-921


BY THE ACCUSED:  (Mr. Klosky)

Yes, Your Honor.

BY THE COURT:

Fine, so we'll do the pleas.

PAR LA COURONNE:

Concernant brièvement, Monsieur le Juge, les faits
de cette cause, en date du 23 juillet 1991, des
barils de hashish sont récupérés au large de
Mingan après avoir été largués d'une barge, soit
le ... le Giant Ford tiré par un remorquer d'océan
le Pacific Type III. (sic)

Je vous dis tout de suite que tous les stupéfiants
soit la drogue douce, c'est-à-dire le hashish men-
tionné à l'acte d'accusation que vous avez devant
vous a été récupérée par les policiers de la Sûre-
té du Québec.

Les accusés que vous avez devant vous, c'est-à-
dire notamment les accusés Greer et Hutchins
avaient acheté un terrain ainsi qu'un chalet et
avaient bâti un autre petit chalet sur le bord de
la mer, à la hauteur de Rivière-au-Tonnerre.
Quant à ces deux accusés, c'est ... et vous ver-
rez quant aux suggestions communes que nous vous
ferons dans quelques instants, il s'agissait de
deux (2) individus qui supervisaient l'opération,
c'était ... c'est-à-dire opération qui consistait
à récupérer les ... finalement les îlots de barils
de hashish qui avaient été largués à la mer, les

jz                      -8-

SENTENCE

CAUSE NO. 01-018172-921

ramener à terre finalement et de là, les charger
sur des petits camions et de là, les amener en
Ontario aux abords de la route 401, dans ce qu'on
peut appeler un "rest area" et de là, nous n'avons
pas de preuves au dossier quant à la destination
de cette drogue-là, sauf en Ontario.

Maintenant le travail si je peux dire de chacun
des accusés était principalement de transporter
ces barils de hashish là à bord de camions, de
genres de petits pick-up. Evidemment, Monsieur le
Juge, la drogue ayant été récupérée, un tel trans-
port n'a pas eu lieu. C'était cependant ce que les
accusés devaient faire, sauf dans le cas de Mon-
sieur Beaudry.  Celui-ci ne devait que rapporter
une remorque ayant servi à apporter un bateau qui
aurait servi évidemment à aider le transport des
barils de l'océan à la berge.

Quant aux accusés, Monsieur le Juge, ceux-ci ont
été incarcérés pendant leur demande d'extradition
faite par le Canada envers les Etats-Unis.  Ils
ont été incarcérés pour une période d'au-delà d'un
an, soit une fois multipliée par deux, telle que
la jurisprudence le reconnaît en matière de déten-
tion avant procès, ça équivaut à une ... déjà à un
temps purgé de deux (2) ans et quatre (4) mois,
soit vingt-huit (28) mois.

Alors les représentations que nous vous faisons
quant à la sentence à être imposée, le tout res-

jz                    -9-                    0000035

SENTENCE

CAUSE NO. 01-018172-921

pectueusement soumis, Monsieur le Juge, quant aux
deux (2) individus que je vous ai décrits comme
étant ceux qui finalement supervisaient l'opéra-
tion, soit Monsieur Greer et Monsieur Hutchins, la
suggestion que les parties vous font est de huit
ans et demi (8 1/2) de ce jour.

Quant aux autres individus, soit Mayo, Klosky,
Carr, Pereya, Cunningham, Desautels, la suggestion
que nous vous faisons de ce jour est l'imposition
d'une sentence de quatre (4) ans de pénitencier et
également ceux-ci, comme dans le cas de Greer et
Hutchins, avaient déjà purgé finalement une déten-
tion préventive de vingt-huit (28) mois.

Dans le cas d'Eugène Beaudry, Monsieur le Juge,
étant donné que nous avons au dossier une partici-
pation quand même minime, si je peux m'exprimer
ainsi, nous allons vous suggérer une imposition
d'une sentence de trente (30) mois de pénitencier
de ce jour.

C'est évident Monsieur le Juge que quant à nous,
et les parties ont tenu compte du fait que  les
accusés offrent un plaidoyer de culpabilité à la
première opportunité raisonnable.  C'est évidem-
ment un procès qui aurait pu durer quelques mois.
Il y a de nombreux témoins qui auraient été ap-
pelés et même de régions éloignées, à venir té-
moigner ici à Montréal.  Il y a de nombreux points
de droit qui également auraient été soulevés lors

jz                        -10-                    0000036

SENTENCE

CAUSE NO. 01-018172-921

de ce procès qui aurait demandé quand même de longues sessions d'audition.

[Alors Monsieur le Juge, considérant tous les faits au dossier, considérant la détention préventive des détenus, considérant la jurisprudence sur sentence applicable en matière de drogues douces et considérant tout ce que je viens de mentionner, nous vous faisons respectueusement, Monsieur le Juge, la suggestion commune que je viens de vous énumérer.]

Quant aux antécédents judiciaires des accusés, quant à nous, Monsieur le Juge, ils n'auraient pas influencé d'une manière ou d'une autre la suggestion que nous faisons étant donné qu'il s'agissait dans quelques cas d'amendes reçues il y a quand même quelques années pour des infractions quand même mineures.

C'est la raison pour laquelle le ministère public ne vous fait pas de représentations quant aux antécédents judiciaires des accusés.

Alors, le tout respectueusement soumis, Monsieur le Juge.

PAR LA DEFENSE: (Me Massicotte)

Alors en autant que mon client, Monsieur Greer, est concerné et que les clients que je représente pour Maître Morneau sont concernés, il s'agit d'une suggestion commune à laquelle nous agréons et pour laquelle nous n'avons rien d'autre à ajou-

jz                    -11-                    0000037

SENTENCE

CAUSE NO. 01-018172-921


ter.

PAR MAITRE JEAN CHALOIS
PROCUREUR DE LA DEFENCE: (Mr. Hutchins)

Et c'est également le cas pour Monsieur Hutchins
que je représente.

BY MAITRE RICHARD SHADLEY
ATTORNEY FOR THE DEFENCE: (Mr. Beaudry)

As far as Mr. Beaudry is concerned, My Lord, I
have nothing further to add to the representations
made by my learned friend.  I have one thing to
clarify though. My learned friend, perhaps it was
a slip on his part, but he knows full well that
Mr. Beaudry has not served thirteen (13) or four-
teen (14) months of preventive detention because
for particular circumstances of which my learned
friend is also aware, Mr. Beaudry was free on bail
in the United States while awaiting extradition
and always presented himself when required.   So
the preventive detention for Mr. Beaudry is con-
siderably less.

The Crown is aware of this. They have taken it
into consideration but for further clarification
of the record, I want it perfectly clear that his
preventive detention was considerably less than
the others.

PAR LA COURONNE:

C'est exact, Monsieur le Juge.

BY THE COURT:

Fine.

jz                        -12-                    0000038

SENTENCE

CAUSE NO. 01-018172-921

BY MAITRE JULIO PERIS
ATTORNEY FOR THE DEFENCE:    (Mr. Perera & Mr. Kolsky)

As far as Mr. Pereya and Mr. Kolsky, we also have absolutely nothing to say, My Lord.

PAR UN PROCUREUR NON IDENTIFIE:

La même chose, Monsieur le Juge, pour Monsieur Mayo.

BY THE COURT:

I then understand that the ... I was going to say the organizers, Mr. Greer and Mr. Hutchins, the suggestion is ... the suggestion is eight years and a half (8 1/2) and for all the other accused, it would be four (4) years expect for Mr. Beaudry where the suggestion is thirty (30) months, that's correct?

BY THE CROWN:

Yes sir.

BY THE COURT:

I think the suggestion is (inaud.) so considering that their ... with the exception of Mr. Beaudry, they have been detained for a little bit more than a year which would give us twenty-eight (28) months in prison already.  Also the fact that they are pleading guilty which makes a difference also since a long trial is not ... will not take place and that's always an important consideration, at least on my part, so the sentences will be as follows:  in the case of Mr. Hutchins, Stephen

jz                    -13-                    0000039

SENTENCE

CAUSE NO. 01-018172-921

Brent, it will be eight years (8) and six months
(6).

In the case of ... of Clara Cunningham, it will be
four (4) years imprisonment.

In the case of James Stewart Mayo, it will be four
(4) years also.

In the case of Mr. William Greer, it will be eight
years (8) and six months (6), his as well as Mr.
Hutchins being different from all the others.

In the case of Mr. Beaudry, it will be thirty (30)
months.  He's the ... since he was the driver of
the van.

Mr. Pereya, Gary Norman Pereya, it will be four
(4) years also.

Mr. Joseph Robert Desautels, four (4) years.

William Carr, it will be four (4) years.

And Glen William Kosky, four (4) years imprison-
ment.

PAR LA DEFENSE: (Me Chalois)

Plaise à la Cour ...

PAR LA COURONNE:

Quand aux autres ...

PAR LA DEFENSE:

Oui, il y a une question d'adjudication, Votre
Seigneurie, puisque dans ce dossier, en plus de
saisie de terrain, il y a eu également saisies de
véhicule moteur.  Alors je demanderais que les
adjudications sur toutes les choses saisies soient

jz                      -14-                0000040

SENTENCE

CAUSE NO. 01-018172-921

reportées à une trentaine de jours.

PAR LA COURONNE:

C'est exact.

PAR LA DEFENSE:

Puisque nous devons rencontrer les autorités du
ministère public et qu'il y a d'autres développe-
ments possiblement dans des dossiers connexes dans
cette affaire.

PAR LA COURONNE:

Et quant aux autres chefs d'accusation, Monsieur
le Juge, nous vous demanderions l'arrêt des pro-
cédures quant à ces chefs-là.

PAR LA COUR:

Alors, les procédures sont arrêtées, sont
suspendues sur des ... sur les autres chefs et
l'enquête sur la ... la remise des objets saisis,
vous voulez fixer ça à quel moment?

PAR LA COURONNE:

Juste un instant, avant que les ...

PAR UNE VOIX NON IDENTIFIEE:

Bien Monsieur qui est ici ...

PAR LA DEFENSE:

Non, non c'est parce qu'il y a un lieutenant qui
est malade mais je pense qu'on a pas besoin de sa
présence pour ça.

PAR LA COUR:

Non, pour l'enquête, il va être correct.

*Maureen Rowe*

SENTENCE

CAUSE NO. 01-018172-921

PAR LA DEFENSE:

Trente (30) jours Monsieur le Juge.

PAR LA COURONNE:

Exact.  Maintenant sur ... Madame la greffière,
sur le rôle, vous voyez qu'il y a d'autres dos-
siers, autres que celui de William Greer, tous les
autres dossiers, également arrêt des procédures.

PAR LA COUR:

Très bien.

PAR LA GREFFIERE:

Oui, d'accord.

PAR LA COURONNE:

Ca va?

PAR LA GREFFIERE:

La requête pour les saisies, est-ce que vous fixez
une date ou ...

PAR LA COUR:

Oui, le 11 novembre, est-ce que ça peut aller à
tout le monde.

PAR LA DEFENSE:

Non.  Le 12?

PAR LA COUR:

Le 12 novembre, au 4.06?

PAR LA DEFENSE:

Juste un instant, Monsieur le Juge.  Non, Monsieur
Le Juge, je m'excuse.  J'aurais la semaine suivan-
te, le 17 à ... le 17 novembre?

PAR LA COUR:

jz                          -16-

0000042

SENTENCE

CAUSE NO. 01-018172-921


Bon est-ce que ça va pour tout le monde cette
fois-là?  Le 17 novembre?

PAR LA COURONNE:

Mardi le 17 novembre?

PAR LA COUR:

Oui.

PAR LA COURONNE:

Oui.

PAR LA COUR:

Alors 17 novembre, 4.06 pour adjudication des
biens saisis.

PAR LA COURONNE:

Merci Monsieur le Juge.

PAR LA DEFENSE:

Merci.

PAR LA COUR:

Très bien.


AJOURNEMENT

_____

0000043

jz                          -17-

I, the undersigned, an Official Court
Reporter, do hereby declare under my oath of
office that the foregoing pages are and do
contain a true and faithful transcription of
the proceedings in this case, the whole taken
by mechanical recording and verified, according
to the Law.

AND I HAVE SIGNED,

Maureen Rowe,

Official Court Reporter

7-02

U.S. TRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JAN 15  2 24 PM '99

UNITED STATES OF AMERICA         :

                               :          BY _____
                               :             DEPUTY CLERK
               v.               :          No. 2:95CR72-1, 2, 4, 11
                               :
WILLIAM GREER                    :
STEPHEN HUTCHINS                 :
THOMAS COOK                      :
GLEN KOSKI                       :



### ORDER: GUIDELINE APPLICATION ISSUES

The Defendants have raised a number of guideline application
issues. Some of those issues are relevant to all of the
defendants, while other issues relate to only one or two of them.
The Court will address each of these issues in turn.

I.  Application of United States v. Singleton

The Defendants seek to exclude the testimony of various
cooperative witnesses pursuant to a recent Tenth Circuit Court of
Appeals decision in United States v. Singleton, 144 F.3d 1343
(10th Cir. 1998), *vacated, reh'g granted*, 144 F.3d at 1361. The
Singleton panel found that the Government violated 18 U.S.C. §
201(c)(2) by promising leniency to a witness in return for his
testimony. The Tenth Circuit Court of Appeals sua sponte vacated
the opinion of the panel, ordered rehearing en banc, and recently
reversed the panel. United States v. Singleton, ___ F.3d ___,
No. 97-3178, 1999 WL 6469 at *1 (10th Cir. Jan. 8, 1999) (statute
does not apply to US Attorney functioning within official scope).

The Singleton panel decision has been rejected by the

**Attachment B**

0000045

VII.   Drug Quantities

The presentence reports attributed to each Defendant more than 6000 kilograms of hashish, resulting in base offense levels of 38.  Each Defendant objects to this calculation.

Critical to this calculation is whether the 85 tons of hashish from the 1989 and 1991 off loads are included in the base offense level calculation.  All four defendants were convicted of conspiracy to violate the MDLEA (Count 4).  If the 85 tons of hashish are includable under Count 4, then this amount will be counted against all four defendants.

Under 46 U.S.C. App. 1903(a), (g) and (j), the Government must prove the presence of illegal drugs on board the vessel. Without the drugs, there can be no conviction.  The drugs on board are not considered relevant conduct under USSG § 1B1.3, but are part of the offense itself.  Because of their convictions under the MDLEA, each of the defendants is responsible for all of the drugs on board.  But "the principles of sentencing accountability are not always the same as the principles and limits of criminal liability."  USSG § 1B1.3, comment. (n. 1).

From the testimony at trial and at sentencing, it is clear that the vast majority of the hashish on board the vessels in 1989 and 1991 was destined for Canada.  Moreover, three of the four defendants served time in Canada for this importation. Although a violation of the MDLEA is a crime against the United

21

States and not a foreign crime, the fact that these defendants have been prosecuted, convicted and incarcerated for these drugs, which for the most part never reached United States soil, is crucial to this Court's determination of the quantities of drugs for which they should be sentenced here.  Just as foreign sentences are not counted in computing a defendant's criminal history category, and foreign crimes are not included in the base offense level, United States v. Azeem, 946 F.2d 13, 16 (2d Cir. 1991), foreign drugs in all fairness should not be added to the total drug quantity.

This case is of course distinguishable from Azeem, in which a panel of the Second Circuit Court of Appeals held that a defendant's drug activities in Egypt, although part of the same course of conduct as his offense of conviction (conspiracy to import heroin), should not be considered in calculating his base offense level.  The court reasoned that the Egyptian activity was not a crime against the United States and therefore should not have been included in the base offense level calculation. The offloads in this case, unlike the situation in Azeem, did not involve a distinctly foreign crime.  Planning and follow-through for the offloads occurred within the United States as well as Canada.  Nonetheless, although Azeem does not control the outcome here, I find that to include the entire Canadian shipments of drugs in these defendants' base offense level calculations would

22

result in drug quantities disproportionate to the criminal activity undertaken against the United States, as opposed to Canada.

The Government and the Defendants sharply dispute whether any of the hashish offloaded in 1989 entered or was likely to enter the United States. Weighing the conflicting testimony on this point, I find it credible that, at a minimum, hashish from the 1989 off loads did enter the United States at the Pipeline and at Line Farm. That conclusion is based upon the following factors:

(1) Before the Line Farm and the Pipeline smuggling in late 1989 and 1990, all of the hashish smuggling efforts were directed northward, taking drugs from the United States to Canada. After the offload in 1989 the flow of hashish reversed direction.

(2) Greer told Michael Johnson that the hashish market was flooded in Montreal due in large part to the 1989 offload, thereby resulting in the southward flow of hashish.

(3) James Mayo testified that he was paid in hashish soon after the offload.

(4) Johnson testified that Greer had told him that Greer was to be paid in hashish.

(5) Johnson, Mayo and Gary Peryea were present at the 1989 offload and were able to identify the packaging materials of the hashish taken off the boats. They also observed the packaging of

23

COURT
COPY

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

COPY

UNITED STATES OF AMERICA    *
                          *
       v               *
                           *
WILLIAM GREER          *  CRIMINAL FILE NO. 95-72-01
STEPHEN HUTCHINS      *                 95-72-02
THOMAS COOK           *                 95-72-04
GLEN KOSKI            *                 95-72-11

EVIDENTIARY HEARING
Friday, January 15, 1999
Burlington, Vermont

BEFORE:

     THE HONORABLE WILLIAM K. SESSIONS III
     District Judge

APPEARANCES:

     DAVID V. KIRBY, ESQ. and GARY G. SHATTUCK, ESQ.,
       Assistant United States Attorneys, Federal Building,
       Burlington, Vermont; Attorneys for the United States

     ROBERT KALINA, ESQ., 405 Park Avenue, New York, New York;
       Attorney for Defendant William Greer

     MARK A. KAPLAN, ESQ., Jarvis & Kaplan, 95 St. Paul Street,
       Burlington, Vermont; Attorney for Defendant Stephen
       Hutchins

     BRADLEY S. STETLER, ESQ., Stetler & Allen, 95 St. Paul
       Street, Burlington, Vermont; Attorney for Defendant
       Thomas Cook

     MARTIN A. MALEY, ESQ., McGinn & Maley, 28 Catherine
       Street, St. Albans, Vermont; Attorney for Defendant Glen
       Koski

ANNE E. NICHOLS
Registered Professional Reporter
United States District Court
P.O. Box 5633
Burlington, Vermont  05402
(802) 860-2227

**Attachment C**

0000049

1    Now, in regard to role in the offense, this is divided

2    into a couple of parts.  First, in regard to Mr. Hutchins and

3    Mr. Greer.  At first blush, this is a large conspiracy

4    involving well more than five participants.  It's certainly

5    organized by Mr. Greer and also by Mr. Hutchins.  However, I

6    think it's important to look at the entire conspiracy, and in

7    this conspiracy, there are other persons who were very

8    actively involved and perhaps in charge.

9    Certainly the profits were being shared primarily by the

10   Canadians and the Dutch, and the orders were coming from

11   Canada as well.  And it seems to me that in light of the fact

12   that the role of these defendants was primarily as movers of

13   drugs from one place to another, albeit in an incredibly

14   organized and serious way, they fit the three level as opposed

15   to the four level.  They're managers as opposed to

16   organizers.  The ones who share in the profits, according to

17   the guidelines, are the ones that get the four level

18   assessment.

19   Now, in regard to drug quantities, I think the lawyers

20   could have determined how I was approaching the offload.  My

21   assessment of the situation is that the government has proven

22   that drugs from the 1989 offload both came into the United

23   States, reasonably could have been anticipated by all

24   concerned to have come into the United States, so that drugs

25   from the offload should be factored in.  Clearly state this on

1  the record, that it seems to me that they should be factored

2  in.

3       The question is whether, in this particular situation, all

4  of the drugs under the Maritime Drug Law Enforcement Act

5  should be attributed to the defendants or whether that portion

6  should be attributed which was intended or was likely to end

7  up in the United States.

8       The Azeem case is not directly on point because it deals

9  with criminal culpability.  Rather, the issue, seems to me, is

10  one of guideline application, and what is unique about this

11  case, and which distinguishes this case from all other I think

12  Maritime Drug Enforcement Act cases, or likely to, is that

13  these defendants were prosecuted in Canada and in fact

14  incarcerated for a significant period of time as a result of

15  the same activity.

16       So if in fact you say all of the drugs were to be

17  attributed for this sentence as well as the Canadian sentence,

18  then obviously there is a -- there is a duplication.  And one

19  of the possibilities, quite frankly, was just to suggest, take

20  the 6,000 and then give credit for the time that one served in

21  Canada.  But isn't -- first of all, that probably would result

22  in lesser sentences for two of the defendants, but more than

23  that, that isn't the accurate reflection of what this case is

24  about.

25       This case is about drugs coming into the United States, it

1  seems to me. And so I determined that, based upon my

2  assessment of the evidence, the Pipeline drugs and the Line

3  Farm drugs were very likely to have come from the 1989

4  offload. The total consisted of 1400 pounds, approximately,

5  which is two percent of the offload, and as a result, it

6  seemed logical to me first to attribute that quantity,

7  together with what I would anticipate to be a logical

8  conclusion, and that is two percent of the 1991 offloads as

9  well coming into the United States. So as a result, I

10  assessed those weights based upon the offloads.

11      In addition, I went through all of the statements of all

12  of the participants in the border crossings. Rather than

13  going to the source, from the Pakistanis, because of course it

14  becomes confusing when you talk about the source from --

15  involving the marijuana in the 1970s, I went to the border

16  crossings, taking all of the statements of the defendants.

17      Based upon that, I have also, in regard to Mr. Greer,

18  determined that 15 trips were made to Florida, between one and

19  three kilos taken back, involving Mr. Johnson. Assessed all

20  of those. Assessed the trips from Mr. Mayo as well.

21      Again, this is described in detail. But when one adds up

22  all of the quantities, the conclusion is that, first of all,

23  Mr. Greer and Mr. Hutchins fall within 36. Mr. Greer is

24  slightly over 5,000. Mr. Hutchins is slightly under 5,000.

25      Now, the close question, and the one obviously that could

U.S. DISTRICT COURT                    - 38 -                    KOSKI, GLEN W.

| 155. | 8-20-91 (age 41) | Consp. to Traffic in a Narcotic; Ct. of Sessions, Montreal, Prov. of Queb., Canada | 10-13-92; 4 yrs. 2-12-94; paroled via deportation | 4A1.2(h) |
|------|------------------|-----------------------------------------------------------------------------------|---------------------------------------------------|----------|

This conviction comprises conduct outlined in the report above. The defendant spent a total of thirty-three months in detention on this charge. That time period includes the time the defendant spent incarcerated in the United States awaiting extradition to Canada.

Criminal History Computation

156. The defendant has zero criminal history points. He is in criminal history category I.

Other Criminal Conduct

157. None.

Pending Charges

158. None.

Other Arrests

159. None.

PART C.  OFFENDER CHARACTERISTICS

Personal and Family Data

160. Glen W. Koski, age forty-eight, was born on December 12, 1949 in Concord, Massachusetts. The defendant's parents, Paul John Koski and Vera (Tillhonen) Koski, both seventy-six, reside at 46 Powers Road in Littleton, Massachusetts. Both parents are retired. The defendant has no siblings. The defendant was raised in Littleton, Massachusetts and lived in that town until the age of seventeen when he moved to Burlington, Vermont to attend Champlain College. Following college, the defendant lived in Colorado for a short period working construction in the summer and hotel work in the winter. After less than a year in Colorado, the defendant moved back to Massachusetts for a few months where he worked in the construction field. The

Attachment D

UNITED STATES DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

# AUTHORIZED UNESCORTED COMMITMENTS AND TRANSFERS

CHIEF EXECUTIVE OFFICER:   THE PRISONER IDENTIFIED BELOW HAS BEEN AUTHORIZED FOR UNESCORTED COMMITMENT TO YOUR FACILITY.

AUTHORIZED BY:  *USM*

| SIGNATURE AND TITLE | DATE | DOJ MNEMONIC |
|---|---|---|
| *John E. Rawlie* | 01/27/99 | *MVERM* |

| NAME OF PRISONER | REGISTER/DOCKET NO. | REPORT DATE | REPORT TO (DOJ MNEMONIC): |
|---|---|---|---|
| *KOSKI  GLEN* | *03235-082* | *02/16/99* | *BPALW* |

| | FINGERPRINT–RIGHT THUMB–FULL ROLL | FINGERPRINT–RIGHT THUMB–FULL ROLL |
|---|---|---|
| | DISCHARGING AUTHORITY | RECEIVING FACILITY |

USP LVN                         Previous editions not usable                         BP–385(51) – JULY, 1979

0000054

■✦■   Correctional Service    Service correctionnel
        Canada                Canada

        Ottawa, Canada
        K1A 0P9

        **14 MAY 1999**

                                                            Your file    Votre référence

                                                            Our file     Notre référence

Mrs. Karen Gemberling
Records Management
Federal Prison Camp Allenwood
PO Box 1000
Rt 15
Montgomery, Pennsylvania
17752-9718

Dear Mrs. Gemberling:

                    KOSKI, GLEN WILLIAM, FPS:165176D

This is further to your request of March 23, 1999, for details on Mr. Glen Koski's
sentence.  I apologize for the delay in replying.

According to the information contained in Mr. Koski's file, he remained in custody
from the date of his arrest on August 16, 1992, until the date of his sentence on
October 13, 1992.  The following is a breakdown of his sentence:

Term of incarceration: 4 years
Date of arrest:  August 16, 1992
Date sentence imposed:  October 13, 1992
Date admitted to institution:  October 16, 1992
Date of expiration of sentence:  October 12, 1996

Should you require additional information, please do not hesitate to contact me.

Yours truly,

*Lorraine Lachance*

Lorraine Lachance
A/Analyst
International Transfers
Tel: 613-992-8397
Fax: 613-952-7676

# Canada

# EXHIBIT
# 3

0000056

710

AO 245B (Rev. 8/96) Sheet 1 - Judgment in a Criminal Case

# United States District Court

## District of Vermont

U. S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
1-20-99
BY _____ ram
DEPUTY CLERK

UNITED STATES OF AMERICA

v.

**Glenn Koski**

Reg # 03235-082

### JUDGMENT IN A CRIMINAL CASE

(For Offenses Committed On or After November 1, 1987)

Case Number:  **2:95CR00072-011**

Martin Maley, Esq.

Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☒ was found guilty on count(s)  4
after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 46 U.S.C. ' 1903 (a)(g) & (j) | Violations of the Maritime Drug Act. | 07/31/1991 | 4 |

RECEIVED
JAN 29 1999
ALLENWOOD
RECORDS OFFICE

The defendant is sentenced as provided in pages 2 through __9__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☒ The defendant has been found not guilty on count(s)  1

☐ Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.: **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** | 01/19/1999 |
| Defendant's Date of Birth: **12/12/1949** | Date of Imposition of Judgment |
| Defendant's USM No.: **03235-082** | |
| Defendant's Residence Address: | |
| **25 Hill Road** | Signature of Judicial Officer |
| | **William K. Sessions III** |
| **South Hero**          VT      05486 | **U.S. District Judge** |
| | Name & Title of Judicial Officer |
| Defendant's Mailing Address: | |
| **25 Hill Road** | 1-20-99                    0000057 |
| | Date |
| **South Hero**          VT      05486 | |

JUDGMENT ENTERED ON DOCKET

AO 245B (Rev. 8/96) Sheet 2 - Imprisonment

| | | Judgment-Page __2__ of __9__ |

DEFENDANT:     Glenn  Koski

CASE NUMBER:     2:95CR00072-011

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of ___30___ month(s) _____.

☒  The court makes the following recommendations to the Bureau of Prisons:

**strenuously recommends participation in the 500 hour drug/alcohol rehabilitation program offered by the Bureau at the Allenwood Camp facility.**

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at  _____ a.m./p.m.  on  _____ .

    ☐  as notified by the United States Marshal.

☒  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☒  before 2 p.m. on  ___02/16/1999___ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

_____

Defendant delivered on _02-16-99  via U/S_ to _Allenwood Federal Prison Camp_

at _Montgomery PA-17752_, with a certified copy of this judgment.

                                        _W. J. Jusino, Warden_

                                        UNITED STATES MARSHAL

                 By _C Frey LJt_

                                     Deputy U.S. Marshal

AO 245B (Rev. 8/96) Sheet 3 - Supervised Release

Judgment-Page ___3___ of ___9___

DEFENDANT:     Glenn Koski
CASE NUMBER:     2:95CR00072-011

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of _____3_____ year(s) .

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below) . The defendant shall also comply with the additional conditions on the attached page (if indicated below).
See Special Conditions of Supervision - Page      4

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 8/96) Sheet 3 - Supervised Release

DEFENDANT:        Glenn  Koski
CASE NUMBER:      2:95CR00072-011

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall participate in a program approved by the U.S. Probation Office for substance abuse, which program may include testing to determine whether the defendant has reverted to the use of drugs or alcohol.  The defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or the availability of third party payment.  The defendant shall refrain from the use of alcohol and other intoxicants during and after treatment.

The defendant shall refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter for use of a controlled substance.

The defendant shall make fine payments.

AO 245B (Rev. 8/96) Sheet 5, Part A - Criminal Monetary Penalties

Judgment-Page __5__ of __9__

DEFENDANT: **Glenn Koski**

CASE NUMBER: **2:95CR00072-011**

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $        50.00 | $     6,000.00 | $ |

☐ If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . .   $ _____

## FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _____ .

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☒ The interest requirement is waived.

   ☐ The interest requirement is modified as follows:

## RESTITUTION

☐ The determination of restitution is deferred until _____ . An Amended Judgment in a Criminal Case will be entered after such a determination.

☐ The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | * Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
|  |  |  |  |

0000061

| Totals: | $ _____ | $ _____ |

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses

AO 245B (Rev. 8/96) Sheet 5, Part B - Criminal Monetary Penalties

Judgment-Page __6__ of __9__

DEFENDANT:      Glenn  Koski
CASE NUMBER:    2:95CR00072-011

# SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A  ☒  in full immediately; or

B  ☐  $ _____ immediately, balance due (in accordance with C, D, or E); or

C  ☐  not later than _____; or

D  ☐  in installments to commence _____ day(s) after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E  ☐  in _____ *(e.g. equal, weekly, monthly, quarterly)* installments of $ _____ over a period of _____ year(s) to commence _____ day(s) after the date of this judgment.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

**Payment of any unpaid portion of the fine shall become a condition of supervised release.**

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program are to be made as directed by the court, the probation officer, or the United States attorney.

AO 245B (Rev. 8/96) Sheet 6 - Statement of Reasons

DEFENDANT:        Glenn  Koski

CASE NUMBER:        2:95CR00072-011

# STATEMENT OF REASONS

☐  The court adopts the factual findings and guideline application in the presentence report.

## OR

☒  The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

**See Additional Factual Findings and Guideline Application Exceptions - Page   8**

**Guideline Range Determined by the Court:**

    Total Offense Level:        29

    Criminal History Category:        I

    Imprisonment Range:    87 to 108 months.

    Supervised Release Range:    at least 3 years but not more than 5 years; probation is not authorized.

    Fine Range: $ ___15,000.00___ to $ __4,000,000.00__

        ☐  Fine waived or below the guideline range because of inability to pay.

    Total Amount of Restitution: $ _____

        ☐  Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

        ☐  For offenses committed on or after September 13, 1994 but before April 23, 1996 that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the forseeable future under any reasonable schedule of payments.

        ☐  Partial restitution is ordered for the following reason(s):

    ☐  The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

    ☐  The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

## OR

    ☒  The sentence departs from the guideline range:

        ☐  upon motion of the government, as a result of defendant's substantial assistance.

        ☒  for the following specific reason(s):

        **See Additional Reasons for Departure From the Guideline Range - Page   9**

AO 245B (Rev. 8/96) Sheet 6 - Statement of Reasons

Judgment-Page   8   of   9

DEFENDANT:        Glenn Koski
CASE NUMBER:      2:95CR00072-011

## ADDITIONAL FINDINGS AND GUIDELINE APPLICATIONS EXCEPTIONS

that the offense involved at least 600 kilograms but less than 2000 kilograms of hashish and that the defendant's role in the offense falls between minor and minimal participant and his offense level is reduced by 3 levels; total offense level is 29; imprisonment range is 87 to 108 months. (Please see the Court's written order filed 1/15/99, P#702 on the Court's docket for more information on the Court's findings).

AO 245B (Rev. 8/96) Sheet 6 - Statement of Reasons

Judgment-Page __9__ of __9__

DEFENDANT:     **Glenn Koski**

CASE NUMBER:     **2:95CR00072-011**

## ADDITIONAL REASONS FOR DEPARTURE FROM THE GUIDELINE RANGE

defendant's motion for downward departure based on unique family circumstances is granted; Court departs to total offense
level 18; imprisonment range 27 to 33 months; fine range $6,000 to $4,000,000.

c000065

hereby attest and certify on
January 20 1999 that
the foregoing document is a full, true and correct
copy of the original on file in my office, and in my
legal custody.
RICHARD PAUL WASKO
Clerk, U.S. District Court
District of Vermont

BY: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

GLEN WILLIAM KOSKI,              :
              Petitioner         :
                                 :
        v.                       :    Civil No. 1:CV-00-0640
                                 :    (Judge Rambo)
UNITED STATES,                   :
              Respondent         :

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on this 4th day of August, 2000, she served a copy of the attached

**RESPONDENT'S EXHIBITS IN SUPPORT OF
ITS REPLY TO PETITIONER'S TRAVERSE**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:

Glen William Koski
Reg. No. 03235-082
FPC Allenwood
P.O. Box 1000
Montgomery, PA 17752-9718

KATE L. MERSHIMER
Assistant U.S. Attorney